NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERTO ORTEGA,<br><br>      Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>      Defendant. | Civ. No. 04-5551 (WGB)<br><br>O P I N I O N |

APPEARANCES

LANGTON & ALTER
P.O. Box 1798
2096 St. Georges Avenue
Rahway, New Jersey 07065

By:  Abraham S. Alter, Esq.

    Attorneys for Plaintiff


CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY
970 Broad Street, Suite 700
Newark, New Jersey 07102

By:  Karen G. Fiszer, Esq.
    Special Assistant United States Attorney
    c/o Social Security Administration
    Office of the General Counsel
    26 Federal Plaza, Room 3904
    New York, New York 10278

    Attorney for Defendant

**BASSLER, SENIOR DISTRICT JUDGE:**

The Plaintiff, Roberto Ortega ("Plaintiff"), brings this action pursuant to 42 U.S.C. 405(g) of the Social Security Act. Plaintiff seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits and supplemental security income.  For the reasons set forth in this Opinion, the Court denies Ortega's request and **affirms** the Commissioner's decision.

I.   BACKGROUND

On August 9, 2001, Ortega filed applications for disability insurance benefits and supplemental security income alleging disability as of October 6, 1995.  The application was denied initially and on Reconsideration.  (Tr. 51-55; 58-60).  By Ortega's request, a hearing was held before Administrative Law Judge ("ALJ") Dennis O'Leary, on November 4, 2003.  Ortega's application was denied by a Decision issued November 19, 2003. The ALJ's relevant formal findings are that:

   1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 1997.

   3.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations.

   4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    6.    The [ALJ] has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments.

    7.    The claimant has the residual functional capacity to perform sedentary work.

    12.    The claimant has the residual functional capacity to perform a significant range of sedentary work.

    13.    Although the claimant's limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.23 would direct a conclusion that there are significant number of jobs in the national economy that he could perform. It was Mr. Meola's opinion that an individual can perform work as a coiler, sorter and assembler.

    (Tr. at 22-23)(citations omitted).

Ortega sought Appeals Counsel review. On September 9, 2004, the Appeals Council concluded that there were no grounds for review. A complaint was duly filed with this Court on November 12, 2004.

Ortega seeks to reverse the Commissioner's ruling because the decision is not supported by substantial evidence in the record. Ortega alleges five specific errors of the ALJ in support of his position. These allegations are that:

    A.    the ALJ failed to credit Ortega with all of his severe impairments;

    B.    the ALJ articulated no evidentiary basis for his decision at the third step of the sequential evaluation;

    C.    the ALJ refused to comply with the Commissioner's regulatory mandates with regard to the protocol required for the analysis of subjective complaints;

> D. the ALJ rejected the opinion of Ortega's treating cardiologist without even reciting the rejected opinion; and
>
> E. the ALJ omitted the vast majority of the vocational expert's testimony as well as the Commissioner's psychiatric evidence upon which it was based.

II. DISCUSSION

    A. Standard of Review

    This Court has jurisdiction to review the Secretary's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). See also Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Under § 405(g), the Commissioner's findings of fact are conclusive if they are supported by substantial evidence in the record as a whole. Richard v. Perales, 402 U.S. 389, 390 (1971). If substantial evidence in the record supports the Commissioner's factual findings, they are conclusive and must be upheld. Alexander v. Shalala, 927 F.Supp. 785, 791 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996). According to the United States Supreme Court, substantial evidence means "more than a mere scintilla... [and] such relevant evidence as a reasonable mind might accept as adequate." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

    To determine eligibility for disability benefits, the Secretary follows a five-step inquiry. First, the claimant must not be currently employed. 20 C.F.R. § 404.1520(b). Second, she

must have an impairment that significantly limits her ability to work.  20 C.F.R. 404.1520(c).  Third, the claimant's injury is compared to 20 C.F.R. § 404.1520(d).  If the claimant has such an impairment, then the Secretary must conclude that the claimant is disabled and entitled to benefits.  Id.

If the claimant's impairment is not found in the Listing of Impairments, the fourth and fifth steps must be followed.  To fulfill the fourth step, the claimant must prove that she can not perform her prior work as a result of a severe impairment.  20 C.F.R. § 404.1520(e).  Finally, the fifth step states that if the claimant can not perform her previous work, the Secretary must determine whether the plaintiff can perform any other work available in the national economy.  20 C.F.R. § 404.1520(f).  In so doing, the Secretary must consider the claimant's residual functional capacity along with her age, education and past work experience.  Id.

The burden of proof in steps one through four of this test falls upon the claimant to prove his disability. Ferguson v. Schweiker, 765 F.2d 31, 36 (3d Cir. 1985); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  In considering the fifth step, however, the burden shifts to the Secretary to prove that the claimant can perform other available work.  Ferguson, 765 F.2d at 36; Rossi, 602 F.2d at 57.

Ortega contends that the decision of the Commissioner is

-5-

unsupported by substantial evidence in the record.  This Court has the authority to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g); <u>Shalala v. Shaefer</u>, 509 U.S. 292, 297 (1993).  A remand may be made, pursuant to § 405(g), if the Commissioner has failed to provide a full and fair hearing, failed to make explicit findings, or failed to have correctly applied the law and regulations.  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

    B.   <u>The ALJ Did Not Err By Failing to Credit Ortega's Obesity and Diabetes as a Severe Impairment</u>

Ortega first claims that the ALJ erred by failing to consider his obesity a severe impairment in step two of the sequential evaluation.  Ortega also asserts that even if the ALJ determined that the obesity was not severe, he erred by failing to discuss its non-severity.  This Court does not find that the ALJ erred by failing to discuss Ortega's obesity because Ortega did not allege any impairment due to obesity nor provide any evidence in support of a severe impairment due to obesity.

At this step in the sequential evaluation the burden of proof falls on Ortega to prove his disability.  <u>Ferguson</u>, 765 F.2d at 36; <u>Rossi</u>, 602 F.2d at 57.  First, Ortega did not even allege disability based on obesity at the time that he applied for benefits.  Ortega's Disability Report only claims "depression and heart condition and diabetes" as the illnesses, injuries

-6-

and/or conditions that limit his ability to work.  (Tr. 101-02, 277).  Second, medical records indicate that Ortega's obesity did not develop until well after the last date that he was insured for disability benefits.  (Tr. 172, 193-99).

The ALJ found that Ortega last met the disability insured status requirements on December 31, 1997, and therefore Ortega must establish that he was unable to perform any substantial gainful activity on or before that date in order to be entitled to disability insurance benefits.  (Tr. 17).  Even if there is evidence that an impairment had reached disabling severity after a plaintiff's insured status expired it can not form the basis for entitlement to disability insurance benefits.  <u>DeNafo v. Finch</u>, 436 F.2d 737, 739 (3d Cir. 1971); <u>Manzo v. Sullivan</u>, 784 F.Supp. 1152, 1156 (D.N.J. 1991).

In a medical report dated in March of 1998, just three months after Ortega's insured status expired, Dr. Joseph Lin stated that Ortega was in an "emaciated condition."  (Tr. 172).  Furthermore, Ortega testified on November 4, 2003, that his weight problems did not begin until 1998.  (Tr. 33).  The ALJ did not err by failing to discuss Ortega's obesity because Ortega did not present any evidence of this impairment before his last insured date to the ALJ.

Ortega also claims that the ALJ erred by failing to consider his diabetes, with the resultant diabetic peripheral neuropathy,

-7-

when deciding whether Ortega was disabled on or before his last insured date. Ortega did not put forth any evidence that his diabetes was a severe impairment on or before his last insured date. A medical report from Dr. R. C. Patel indicates that Ortega was not even diagnosed with diabetes until 1998 or 1999. (Tr. 282-84). Additionally, Dr. Patel stated in his November 2002 report that Ortega exhibited no evidence of neuropathy resulting from his diabetes. (Tr. 284). Because Ortega did not put forth any evidence to support a finding that his diabetes was a severe impairment on or before his last insured date, the ALJ did not err when relying on Dr. Patel's report in deciding whether Ortega was disabled due to his diabetes on or before his last insured date.

    C.    <u>The ALJ Properly Compared Ortega's Impairments with the Commissioner's Listings at Step Three of the Sequential Evaluation</u>

Ortega complains that the ALJ's analysis at step three of the evaluation was deficient because he failed to compare the combined effect of all of Ortega's impairments with one or more of the Commissioner's listings. Ortega claims that the "entirety" of the ALJ's analysis with respect to step three is as follows:

> Regarding steps two and three, the evidence establishes the existence of a "severe" impairment involving a mental disorder and cardiac problems, but does not disclose medical findings which meet or equal in severity the clinical criteria of any

> impairment listed in Appendix 1, Subpart P, to the Regulations No. 4.

(Ptf.'s Br. at 18 citing Tr. 18).

However, Plaintiff's counsel seems to have disregarded the fact that the ALJ's decision goes on for another fifteen paragraphs discussing the evaluation under steps two and three. Ortega claims that "[t]he ALJ did not identify the specific listing or group of listings that he utilized for comparison." (Ptf.'s Br. at 18). Yet, the ALJ's Decision explicitly states,

> There is nothing in the medical evidence nor the claimant's testimony that would lead to a finding of disabled. The evidence submitted certainly does not even address any of the elements under Listing 12.04(1) (a) through (i)(the applicable Listing on Depression) nor does it even appear that the claimant was even alleging this.

(Tr. 19).

Ortega claims that the ALJ erred when he did not identify which elements were missing from the comparison. However, the ALJ clearly stated that the evidence regarding Ortega's mental impairment established that Ortega suffered from the meaning of Listing 12.04, Affective Disorder, with respect to the applicable "B criteria," and that the requirements of the "C criteria" have not been satisfied. (Tr. 20). The ALJ concluded that Ortega's mental impairment had no greater than a mild impact in the [B criteria] areas of functioning and in his ability to perform basic work activity. Id.

With regard to Ortega's cardiac condition, the ALJ determined that the evidence does not disclose medical findings which meet or equal in severity the clinical criterial of any listed impairment and that there were no clinical findings pertaining to Ortega's cardiac condition prior to his last insured date.  Id.  Because the ALJ did not fail to compare Ortega's impairments with the Commissioner's listings, this Court does not find that the ALJ's evaluation at step three was deficient.

  D. <u>The ALJ Properly Analyzed Ortega's Subjective Complaints</u>

Ortega alleges that the ALJ erred in his finding that Ortega's subjective complaints of pain were not fully credible. Ortega claims that the ALJ issed a "single, conclusory statement" and "merely cited the factors for consideration" before reaching his credibility determination.  (Ptf.'s Br. at 25).  However, this Court finds that there is substantial evidence of record to support the ALJ's determination that Ortega's subjective complaints of pain were not fully credible.

Because Ortega's complaints suggested a greater severity of impairment than could be shown by objective medical evidence alone, the ALJ reviewed Ortega's subjective complaints of pain under 20 C.F.R. § 404.1529(c).  Although Plaintiff's counsel vehemently contends that the ALJ merely issued a short, conclusory statement regarding Ortega's complaints of pain, this

-10-

Court again finds that Plaintiff's counsel has misrepresented the content of the ALJ's Decision.

The ALJ determined that Ortega's complains of disabling pain are not fully credible and sufficiently explained his findings. The ALJ found that Ortega's daily activities are not limited to the extent one would expect given the complaints of disabling symptoms and limitations.  (Tr. 18).  The ALJ noted that Ortega lived alone; cares for his own personal appearance and hygiene; does household work, including cooking and shopping; uses public transportation; walks around the neighborhood; watches television and reads; visits friends; and, had traveled to Florida to visit family.  Id.  The ALJ concluded, consistent with 20 C.F.R. § 404.1529, that the evidence as a whole does not support the extent of Ortega's subjective complaints.  Id.

Because there is substantial evidence of record in support of the ALJ's determination that Ortega's complaints of pain are not fully credible, the Court does not find that the ALJ erred in concluding that the evidence does not support a finding of disability.

    E.   <u>The ALJ Provided a Sufficient Basis for According No Significant Weight to Ortega's Treating Physician's Opinion</u>

Ortega contends that the ALJ violated the <u>Cotter</u> doctrine by failing to recite the rejected opinion of Ortega's treating cardiologist, Dr. Robert M. Carducci.  However, this Court first

notes that contrary to Plaintiff's assertion, Dr. Carducci's opinion, that Ortega was unable to perform any type of work, is explicitly stated in the Decision. (See Tr. 19). Furthermore, this Court finds that the ALJ has set forth his essential considerations with sufficient specificity to enable this Court to determine that his conclusions are supported by substantial evidence.

The Court of Appeals for the Third Circuit has mandated that the ALJ must express all of the evidence that he considered in reaching his decision, including that evidence which he rejected. Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981). That court stated:

> We need from the ALJ not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

(Cotter, at 705).

The Third Circuit Court of Appeals has emphasized the importance of reciting probative evidence, whether or not it supports the ultimate conclusion. Walton v. Halter, 243 F.3d 703 (3d Cir. 2001). In Walton, the court explained that "on numerous occasions we are unable to conduct our substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection." Id.

However, in this case, the ALJ has adequately set forth reasons for rejecting the opinion of Dr. Carducci. The ALJ determined that he would not accord significant weight to Dr. Carducci's assessment of disability because his assessment is unsupported by his own objective findings. (Tr. 19). Although Dr. Carducci concluded that Ortega was unable to perform any type of work, in his own report of April 7, 2003, Dr. Carducci indicated that Ortega could lift up to ten pounds and had no limitations on sitting. The ALJ also rejected Dr. Carducci's assessment because Ortega "had infrequent trips and significant gaps in history of treatments for the allegedly disabling symptoms." (Tr. 19). The ALJ further determined that no significant weight would be given to the treating physician because Dr. Carducci's conclusion was contradicted by the findings of Dr. Patel. Id.

Dr. Carducci's opinion that Ortega is unable to perform any work is adequately set forth in the ALJ's Decision and the ALJ's reasons for its rejection are similarly included. Accordingly, this Court is able to conduct substantial evidence review and a remand is not necessary in this matter. Furthermore, the Court finds that substantial evidence does support the ALJ's decision to accord no significant weight to the opinion of Dr. Carducci for the reasons set forth above.

      F.   <u>The ALJ Did Not Err in his Evaluation of the Vocational Expert's Testimony</u>

Ortega finally contends that the ALJ erred by omitting certain hypothetical questions posed to the vocational expert when determining whether there were jobs available in significant numbers given Ortega's residual functional capacity ("RFC"). Because these hypothetical questions were based on medical evidence which post-dated the relevant period, this Court does not find that the ALJ erred in determining that Ortega is "not disabled" as directed by the Commissioner's Regulations.

At the fifth step of the evaluation, the ALJ must determine whether Ortega can perform any other work available in the national economy. 20 C.F.R. § 404.1520(f). The ALJ must consider the claimant's RFC along with her age, education and past work experience. <u>Id.</u> In this case, the ALJ determined that based on Ortega's RFC, he is capable of performing a significant range of sedentary work. (Tr. 21). Because Ortega's ability to perform substantially all of the requirements of sedentary work is impeded by additional exertional, and/or non-exertional limitations, a vocational expert was used to help determine whether or not there are a significant number of jobs in the national economy that Ortega can perform given his RFC and other vocational factors. <u>Id.</u> In presenting evidence to the vocational expert, a hypothetical question must reflect all of the claimant's impairments supported by the record. <u>Chrupcala v.</u>

-14-

Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Here, the ALJ accurately presented Ortega's impairments, as of his last insured date, in the hypothetical question given to the expert, Mr. Meola.

The ALJ gave Mr. Meola a hypothetical comprised of an individual having Ortega's age, educational and vocational background, restricted to excessive smoke, dust fumes or other pulmonary irritants; not involving contact with public, only minimal contact with co-workers and supervisors; and involving simple and repetitive tasks.  (Tr. 44).  Meola opined that the individual could perform jobs such as a coiler, sorter and assembler and that these jobs existed in significant numbers in the regional and national economy.  (Tr. 21, 44).

On cross-examination of Mr. Meola, Plaintiff's counsel presented four additional hypothetical questions.  Plaintiff's questions expanded on the ALJ's hypothetical question.  For each scenario, Plaintiff reiterated the restrictions indicated by the ALJ above, then added one of the four limitations in which Dr. Farrell found that Ortega was "moderately limited" in his report of March 26, 2002.  Because Plaintiff's hypothetical questions were based on evidence which described Ortega's condition over four years after his last insured date[1], that portion of Meola's

---

[1]As noted above, the date that Ortega last met the disability insured status requirements was on December 31, 1997, and Plaintiff does not allege otherwise.  (Supra, at 7).

-15-

testimony can not form the basis for entitlement to disability insurance benefits.  <u>DeNafo v. Finch</u>, 436 F.2d 737, 739 (3d Cir. 1971); <u>Manzo v. Sullivan</u>, 784 F.Supp. 1156 (D.N.J. 1991).

Consistent with the Commissioner's regulations, the ALJ reasonably concluded that Ortega retained the ability to perform a range of sedentary work based on his RFC, age, education and past work experience.  (Tr. 21; <u>see</u> 20 C.F.R. § 404.1520(f)).  Substantial evidence of record exists to support the ALJ's determination including the physical examination findings of Dr. Patel.  (<u>See</u> Tr. 19, 282-84).  Accordingly, the ALJ's recitation and evaluation of the vocational expert's testimony was not erroneous.  This Court finds that the ALJ's conclusion, that Ortega is not under a "disability" as defined in the Social Security Act, is supported by substantial evidence and therefore rejects Ortega's argument.

III.  <u>CONCLUSION</u>

For the reasons stated in this Opinion, this Court **affirms** the Commissioner's decision to deny Ortega Social Security disability income benefits and supplemental security income.

An appropriate Order follows.

/S/ WILLIAM G. BASSLER
WILLIAM G. BASSLER, U.S.S.D.J.

Dated: 23 December 2005